May it please the Court. My name is Christian Preuss. I represent the appellant, Church Mutual Insurance Company. In this insurance coverage case, this Court is presented with applying the phrase caused by in the insuring agreement of a liability insurance policy. The insuring agreement, of course, defines the scope of coverage. That's where we begin in determining what coverage… Talk up a little louder. Thank you. I'm sorry. The insuring agreement, of course, defines the scope of coverage. That's where we begin to determine whether a claim is covered or not covered under the insurance policy. Every insuring agreement will have multiple requirements that must be satisfied all within the insuring agreement. The clause caused by is a very frequently used clause in a liability insurance policy. It's standard in a general liability policy, whether on a commercial line and across all industries. It's standard in a homeowner's policy, often an umbrella or excess policy. And it's actually very frequent also in an auto policy. In this particular case, we're dealing with a professional liability coverage that uses the clause caused by in the insuring agreement. There's no reason that clause should be interpreted or applied any different in this case than in any of the other cases where the insuring agreement uses that clause. The underlying fourth amended complaint in the underlying lawsuit has a claim for breach of contract. And that claim for breach of contract alleges that the plaintiffs are all residents of a care facility and they paid for certain services. They did not receive the services they paid for and they want their money back. That's basically the claim in the underlying lawsuit. There are also allegations that Lake Point, the name insured and those that managed it, the Biglers, had a business practice designed to maximize profits in which they deliberately decided they would not hire people necessary and do other things necessary to provide the services for the residents. These were management and operation decisions that permeated their entire business plan. The breach of contract claim in the complaint has the standard elements for breach of contract. Paragraph 36 lists the promises that were broken. Paragraph 37 states this is a material breach of contract. And then paragraph 38 alleges solely economic damages and alleges that the plaintiffs did not receive the identified living services they paid for. So they want their money back. The focus on the coverage issue is on the definition in part on professional health care incident. There's one clause in there that is included in the definition that provides that the definition includes failure to comply with the right of a resident under any state or federal law regulating you, you being the name insured, as a resident health care facility. It does not define professional health care incident as failure to comply with a contractual obligation. The underlying Fourth Amendment amended complaint, which advances only a breach of contract claim in addition to the UTPA claim and the claim against the Biglers individually, does not advance a claim for failure to provide any right of a resident under state or federal law. The residents here alleged that Lake Point breached a contractual promise to comply with state regulations, right? There's no question about that. Correct. That the contract implicitly incorporated the administrative code provisions for licensing of the health care. Well, doesn't that mean that the injury was caused by a failure to comply with state law? The way you phrased it, perhaps. But this is with the right of a resident under any state or federal law. It does not apply to any violation of federal or state law. The regulations that they've cited in the complaint, number one, and there are two parts to this. Number one, it's part of the administrative code. It is a licensing requirement. It's not a right granted to the residents. There are separate statutory rights expressly granting the residents their rights. That is not alleged in their complaint. Right, but what Judge Motz is saying is there's overlap. It sounds to me like you're not denying there's overlap. These are rights that the contract assured, but were rights that were also guaranteed under state or federal law. Am I misunderstanding? There's a step there that I think needs to be taken. The contracts incorporate provisions under the licensing administrative code. The contract, at least alleged in the Fourth Amendment complaint, states that you have agreed to provide us services, and those services are services also included in the administrative code, and you must provide those. In that way, the contract wraps in the administrative code. My point is twofold. Number one, they're alleging the violation of administrative code. They're alleging a failure to comply with state laws, but they're not alleging failure to comply with the right of a resident under the state administrative code. They're alleging failure to comply with a contract. It does not qualify as a professional health care incident, but even if it does, even if you say, well, that's close enough. We're going to say this is a professional health care incident. Then it gets back to what is meant by caused by, and that's where getting into the case law that we've cited, and I want to maybe highlight a couple of them, becomes important because it's different than a rising out of. This court addressed a pretty similar scenario in the Affinity Living versus Star Stone case. In that case, that was a false claims act claim involving a resident facility. A false claim act is different than a breach of contract, but the underlying factual circumstances were the same, and that is that the facility charged for services it did not provide, and in that case, Medicaid was billed and Medicaid was overbilled, and the claim is to give the money back because Medicaid is overbilled. In that case, the insurer argued that there's no coverage because it doesn't fall within the insuring agreement. This court's vicinity, the district court, and then this court also in the discussion, discusses that the claim is not seeking damages for failure to promote professional services. Billing is not a medical incident, similar to breach of contract is not a health care incident in this case. But then this court went on and said, but we're dealing with the phrase a rising out of. A rising out of is much broader than caused by. And it cited the state capital versus nationwide decision, which is a North Carolina Supreme Court decision, emphasizing that when the phrase caused by is used, it's much narrower than a rising out of. Okay, but why can't injury be monetary? I mean, the policy doesn't limit injury to bodily injury. So if I don't get meals that I should be getting, nutritious meals, I'm suffering a monetary injury caused by your failure to provide them as guaranteed under state or federal law. But the claim being asserted is for the breach of the contract that incorporates the state resolution. And I'm saying I've suffered a monetary damage. I'm not saying I'm more weak or infirm or anything because this policy doesn't limit. I mean, I think it's really curious that the policy doesn't limit injury to bodily injury or physical injury, but it doesn't. So why wouldn't monetary injury meet the caused by requirement of the policy definition? The caused by, it's the injury caused by the professional health care incident. Right. And the professional health care incident is not giving nutritious meals. But not giving nutritious meals breaches the contract. It's one step to remove. The contract is the claim that's asserted here as opposed to a claim for damages or any other relief caused by failure to, or a violation of a professional health care incident. What do the state regulations say about these facilities? The state regulations and the ones cited in the administrative code in the complaint are licensing requirements as opposed to any type of direct right of a resident. I understand that, but what do they say about food, for example? There's a certain minimal food price that must be paid for food that must be provided to the residents. Does it say anything about nutrition? In the licensing requirements, I think it all goes to nutrition. It's relating to nutrition, but again, those are licensing requirements. There are separate statutory requirements that list the rights of the residents. And that would be the basis for the resident to assert a claim for a right under a state or federal law. They haven't cited any of the statutory provisions that grant the rights. They've only decided the administrative code. The statutory provisions also provide for a private cause of action. So they have the ability to assert a private cause of action, alleging violation of rights under state law. That is what they have not done. Instead, they've simply alleged breach of contract and seeking to have the money they paid returned to them as opposed to a damage that flows directly from the violation of a right under a state or federal law. The... It's North Carolina Statute 131D-28-21 that lists the rights of a resident under state law, under the statute. That lists the rights. And then it's 131D-28 that gives the private cause of action. So, when you're quoting to me in the contract that the resident has with Lake Point Assisted Living, does it talk about specific state laws? I thought it said that you had to be in compliance with state requirements. Does it say you have to be in compliance with these specific state requirements? Is that what you're saying to us? No, it has to be failure to comply with the right of a resident under state or federal law. It actually says any right of a resident under any state or federal law. It's quite broad. I don't understand where you're getting your distinction here. It's not simply the violation of a state or federal law. It's the violation of or the failure to comply with any right of a resident. The provisions they've cited are not dealing with the right of a resident. They're licensing requirements that they then incorporate into the contract. So, it's one step removed. And for that reason, when you're looking at the phrase caused by instead of arising out of, which has a proximate cause meaning to it, a direct liability meaning to it, instead of the broad arising out of that was addressed in the Affinity Living case, it reaches a different conclusion. And that's emphasized by footnote 12 in the Affinity Living case, which specifically contrasts arising out of with caused by. Cites a Tenth Circuit decision that comes to the opposite conclusion when the insuring agreement uses the phrase caused by instead of arising out of. And Alice would be saying the same here. If the policy language said arising out of, then if there's any violation out there that's been alleged, and this arises out of that overall factual circumstance, then it would satisfy the insuring agreement, just like in the Affinity Living case. But when the phrase caused by is used, and the only claim is a contract claim, it must be directly flowing from the contract claim, not the overall factual circumstances that are alleged in the complaint. If your time has expired, yes. Thank you. Mr. Coates. Thank you, Your Honor. May it please the Court, my name is David Coates. I represent the defendants, Lake Point Assisted Living, Edith Bigler and Tony Bigler. To my right is David Stradley, who represents the resident defendants. I'll be making the entire argument today. And, Your Honor, I think it's relatively straightforward There are only four rules of construction in North Carolina insurance contract law, which are really germane to this. The stocks case, all provisions and insurance policies, which extend coverage to the insurer, must be construed liberally to afford coverage whenever by a reasonable construction. Two, the words used in the policy have been selected by the insurance company. Any ambiguity or uncertainty, as there are many, must be resolved in favor of the policyholder and against the company. Three, where no definition of the term, and this is what the district court, when Judge Myers goes into the definition of injury, and goes to Lacks in Oxford, this is what he really relies on. Where no definition of the term is contained in the policy, unambiguous terms be given the meaning afforded them in ordinary speech, unless the context indicates that another meaning was intended. Four, when a term is ambiguous in that it's susceptible to several reasonable definitions, the rule is that doubt as to which definition to accept will be resolved against the insurance company and in favor of the insured. The plaintiff is not contending that there's any policy exclusion that applies. The plaintiff is not contending that there is breach of any policy conditions. They're only contending that the liability insurance, insuring agreement, is not triggered and therefore they have absolutely no defense obligation and no identification obligation. And as Your Honor has already pointed out, there are three very specific policy issues, used in the policy language, that are pertinent to the inquiry. The insuring agreement is the only issue here, Your Honor. The plaintiff will pay those sums that the insurer becomes legally obligated to pay because of damages because of injury. Injury is not defined by the plaintiff. Two, this insurance applies to injury only if the injury is caused by a professional health care incident. And three, professional health care incident means failure to comply with any right of a resident under any state or federal law regulating you as a resident health care facility. The plaintiff does not take issue with the district court's finding that Lake Point is a resident health care facility. No, but they do take issue with the last, at least I ascertain, maybe I've misunderstood, that the third element that you're talking about, they say that that isn't the right of the resident to rely on these state regulations. Maybe you can speak to that. Yeah, and I think, Your Honor, that fourth amendment complaint in the class action is replete with allegations of there have been these violations of state law and regulations, including the patient's bill of rights. And so no one else has standing to assert those claims other than the residents, and that's precisely what they're doing. And the allegations are complete in that complaint, that there have been violations of these state laws and regulations, which has caused them injury. But his point, I think, is that the residents don't have any right to enforce those state regulations. I think that's what he's saying. I am not familiar with any case that would ever say that that is the law, because I think it's like you have, you know, it's a leap of faith to sit there and say that there are violations, there are alleged to be violations of state laws and regulations pertaining to these residents. And they cite that in their complaint as part of their claims, that those rights have been violated, and then to say they don't have standing to bring those claims. I don't see... Because they only regulate the institution, your client. And I think the patient's bill of rights within the statute under 131D pertains only to their rights, and their allegations that those rights have been violated. I'm not sure how you can back off of your definition of professional health care incident and say that has no application in this case, because the residents somehow don't have the right to bring the claims that they brought. And you look at the four corners of that complaint and the four corners of the policy, and within those eight corners, that's what they're claiming. If you're saying that somehow in the underlying class action there might be summary judgment down the line with respect to those issues, that's one thing. But that's not what we have here, looking at those four corners and those four corners. Those are the claims they've alleged. This is what the policy says about professional health care incident. So you think this argument of theirs, if it has merit, is an argument to dismiss or to grant summary judgment or something. Is that what you're saying? Yes, Your Honor, in the class action. Because they're there. That's what's been alleged. The four corners of the complaint, the four corners of the policy, the allegations or our claims are that we have standing to, we have the right to bring claims for violations of the Patient Bill of Rights under Chapter 131D. And that's the claims. The policy says professional health care incident is violations of any state or federal laws or regulations. I mean, they merit it completely. And so, and there's no assertion, there's no assertion that Edith and Tony Bigler, my other two clients, are not insureds. And again, the Fourth Amendment complaint, the third claim for relief, are negligence claims against the Biglers. And my folks are insureds. And so how can the plaintiff argue that, and their allegations are that the Biglers were negligent and they had a duty to exercise reasonable care in the care management and operation of the facility and that they breached that duty by failure to comply with those state regulations? The staffing requirements, 10 NCAC 13F. The nutritious meal requirements, 10 NCA 13F 0904. The activities requirement, the planned group activities requirement, 10 NCAC 13F 0905. The failure to comply with the patient bill of rights, 10A 13F and the 31B statute. Again, how can plaintiffs say, well, you know, everything's arising out of a breach of contract and so the policy wasn't intended to, we didn't define damages such that it excluded breach of contract claims. Even if that was the case, their claims against the Biglers sounded in a court, which are not premised on a breach of contract. So I'm not sure I understand. That's a leap of faith, I think, that Your Honors, that the court should not make. Yes, sir. So I guess the problem that I'm having, and I think Judge Myers, I guess, acknowledged this issue when he dismissed the claims under A1 of the policy for any error, omissions, or failures in the furnishing of professional health services. Because at bottom, this is a professional liability policy, and it seems odd to then say, on the one hand, that I'm dismissing these claims because there's no professional judgment that was part of the furnishing of food, beverages, medications, et cetera. But on the other hand, say it nonetheless satisfies the requirements of the policy because of a violation of a regulation for those very same acts. Does that make sense? It is, and I think that's Judge Keenan's point about, why did you draft it like that? Our folks had no involvement in the drafting of that insurance contract. The people in the underwriting department in Wisconsin drafted that contract. We had no input on it. And that's how they defined it. And so that's why I think Judge Myers goes into, yeah, we have affinity, which found coverage. And I think Judge Myers, if you read the opinion, says that seemed to be a pretty tenuous thing between it's not a professional health care incident, it's a professional medical incident, between false and fraudulent Medicaid claims equates with a professional medical incident. He said, we don't need that here. Because for some reason, the plaintiff has chosen to say a professional health care incident equates with failure to comply with any right of a resident under state or federal law. And I think, to Judge Keenan's point, it is curious. I'm not sure why they did it. We'll never understand why they did it, but they did it. And I think they had to take ownership of how they defined that in the insuring agreement. I'm not sure how they escaped that. You look puzzled, Judge Diaz. Okay. Well, you're not unhappy about it, I know. No, sir. No, sir. And again, and I think the plaintiff's contention that damage is caused by a breach of contract are not damages caused by a professional health care incident. And that's why I think Judge Myers said, you know, you have your insuring agreement and that's how you define it. So it's not like affinity where we have to have some gymnastics to get to that point. This is what you say. And so when the district court says that the failure to comply with North Carolina regulations governing adult care homes, quote, within the scope of the insurance policy's broad, unambiguous language that a professional health care incident can stem from violations of any right of a resident under state or federal law. And so affinity, which again found coverage, I'm not sure really has any application. I embrace it because it found coverage for false and fraudulent Medicaid billing. And somehow that's a professional medical incident. But we don't need that here and the district court didn't find it needed that here because you have this extraordinarily broad insuring agreement that the plaintiff drafted. And so, for example, I'm not sure how you, the plaintiff quotes extensively about the Zurich case from the Fifth Circuit. Again, insurance law, state law, I think that was Colorado law. And I'm not sure how Zurich has any application because they indicated in that case, I think it was the Zurich policy, they said that false and fraudulent Medicaid billing did not arise out of a medical incident. In essence, they said under, I think it's the Zurich policy, they had three policies there, that in essence they came to the exact opposite conclusion under that policy as the affinity case applying North Carolina law. So I'm not sure how you, and I think Judge Myers is correct, how do you get it's caused by a professional health care incident as you defined it. The allegations in the complaint are replete with that. And so I don't think Zurich or those cases, and a lot of these things, and it's like how you define injury. A lot of the insurance coverage cases cited by the plaintiff, American Revival, Western World, Westfield, they pertain to like commercial general liability policies, which were a different animal. Because they define, they say the insurance agreement is triggered for bodily injury, which they define as physical harm, bodily harm, sickness, disease, and resulting death caused by an occurrence, an accident. They had all sorts of case law about that. Those policies define property damage in the insurance agreement as meaning physical damage to tangible property caused by an occurrence, an accident. We don't have that here. Mr. Coates, you mentioned that you say that these allegations make up both a breach of contract and a tort, I guess, with respect to the owners of the nursing facility. But under your view of this case and the policy, do you need a tort claim for coverage? I mean, a breach of contract would be covered under your view of the policy, right? Yes, sir. Yes, sir. Because they never defined it. They could have defined injury to say, and they could have defined damages. Damages don't include damages arising out of a breach of contract. They didn't do that. They could have said damages don't include economic damages. They didn't do that. Injury, damages, not defined. Professional health care incident, very, very broadly defined. I'm not sure how you escape exactly what the district court did. This is what their policy that they wrote under the rules of construction. There's absolutely a duty to defend my clients based upon there being a professional health care incident. Again, there's no exclusions whatsoever. There's no breach of conditions. There's none of that. We just have allegations about time after time after time. These allegations that these state laws and regulations were violated, which caused damages to these plaintiffs. It falls squarely, squarely within the insuring agreement that they drafted. There's no exclusion. It's just a trigger of coverage in that insuring agreement, and they have to have ownership of how they define professional health care incident. And I think, honestly, Judge Myers, if you read the opinion, he wasn't surprised, per se, by how they defined it. But he said, it's not, affinity is not close to being this. Again, affinity found coverage, but it's like, we have a very definitive policy language here. We don't have to get to false and fraudulent Medicaid billing being a professional health care incident. We have violations of state or federal law which caused injury or damages to the plaintiff, period. That's how you defined it. That's exactly what the residents alleged. I'm not sure. The argument on the other side, I think, seems to be that the residents don't have any right to rely on these violations of state and federal law. Maybe I've misunderstood. And I think you talked about that earlier. Maybe it's a standing argument. I'm not exactly sure what it is. But I think that's the argument, maybe because of the way the policy is written. Yeah, and I'm going to say there's a two-fold argument there. And I'm going to try to think of the second one in a second. But the first argument is that the 131D North Carolina general statute speaks to the patient's bill of rights. That's alleged in the Fourth Amendment complaint in the class action. No one has standing or an ability to use that as a launch for a claim other than the residents. In the four corners of that Fourth Amendment complaint, the class action says, we were injured and we were damaged by the failure to comply with that statute and the failure to comply with these other administrative code statutes about nutritious meals, planned activities, grouped activities. We're injured by that. Yes, ma'am. So the patient's bill of rights has specific things about food? It has. It's like a laundry list of 12 or 15 things. I remember Judge Myers quoted to 131D.21.2 in particular. But it is their rights. And again, the four corners, Your Honor, if that's the plaintiff's claim in the class action, that we were injured or damaged by violation of these rights, if there's an argument in the underlying class action about summary judgment for that issue, that's not what's before the court today. And then did you have a second part to this? Let's hope you forget that, Your Honor. Okay. It's all right. I do think that, again, it just reverts back to, once again, this is exactly what's alleged in the Fourth Amendment complaint of class action completely marries up to how they define a professional health care incident. There's probably a better second argument I can't think of right now. I didn't say threefold. That was good. Your Honor, does that have any questions? Okay. I don't think we do. Thank you. Thank you. Mr. Prius, do you have a little more time for rebuttal? Thank you, Your Honor. I'd like to begin first by addressing briefly the Zurich case and the Affinity Living case. I think counsel described the Zurich case as addressing a rising out of language. It does not. And that's what's significant. There were three insurance policies at issue there. All of them either used the phrase caused by or because of in the insuring agreement, which this court in the Affinity Living case distinguished because caused by is much narrower than a rising out of, which is what was at issue in Affinity Living case. In the Affinity Living case, in reading through the decision, the phrase arising out of is the focal point of that entire decision. This court cites that six or eight times at least in its discussion and then says this is different than caused by. Arising out of is much broader than caused by. Caused by has approximate cause aspect to it.  The characterization of the Fourth Amendment complaint as advancing those types of claims, it doesn't. When looking at the Fourth Amendment complaint, there's a reference to 131D simply in the licensing aspect of the facility in the first couple paragraphs of the complaint. Then it switches to the administrative code. There is no allegation in the complaint that Lake Point violated the rights, any rights of the residents under any state or federal law. Again, professional health care incident does not state any violation of state or federal law falls within the definition. It must be a right of a resident under state and federal law. If you look at paragraph 20 of the First Amendment complaint, it alleges they were not in compliance with federal and state laws, rules, and regulations. It does not allege a violation of rights or failure to comply with rights. Same with paragraph 21. And then when you go to the paragraph, I think it's 50, or 60, where the most citations are made. Again, no allegation that they failed to comply with the right of a resident under a state or federal law. Instead, they did not staff, did not provide activities, and did not do the other things under the administrative code, which are licensing requirements. So that deals with professional health care incident and whether there really is an allegation of professional health care incident. But then that also leads back to caused by. So even if there were an allegation in the complaint that could be categorized as a professional health care incident, the injury still must be caused by that professional health care incident. What's the injury here, assuming there's an injury? You didn't give us our money back. You overcharged us. We have a contract here. You charged us more than the services provided. We want our money back because we didn't get what we contracted for. It's not an allegation that Lake Point or the defendants violated our rights under state and federal law, and therefore we want damages caused by that. We want money because you overcharged us. And if overcharging falls within caused by in a breach of contract claim, it's not difficult to see how an insurance policy in a very broad variety of contexts and many, many insurance policies use caused by. It's not hard to imagine how suddenly the insurance company is now paying for the debts of the insured. That's not what the insuring agreement provides. That's not what caused by provides for this approximate cause connection between the injury and the professional health care incident. And when you have a straight breach of contract claim, that's not what you end up with when that's the only claim asserted. So even if there is a professional health care incident alleged, the injury here, you're not giving us our money back, is not an injury caused by that. I see my time is up. Thank you very much. Thank you, Your Honor. We appreciate the arguments, and we'd ask the clerk to adjourn court for the day. And unfortunately, usually at this time we come down and shake hands, and we enjoy that tradition, but we're not going to be able to do it now. But we wish you well. Stay healthy. Thank you. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Albert Diaz, Barbara Milano Keenan